equal to the amount of the work and materials used in building upon it. It is true, as a general rule, that all improvements by a mortgagor inure to the benefit of the mortgagee without liability or expense to him, by increasing the value of his security. But the legislature have by this act modified that rule in the interest of labor, and postponed or subordinated the lien of a mortgage, and all liens created intermediate to the commencement and completion of a building, to the claims of mechanics for work and materials used in the building. I cannot see any constitutional objections to such an act. With the policy or propriety of the act courts have nothing to do. Those questions are for the legislature. But if it were otherwise, I cannot see any valid objection to the principle or equity of the statute. This disposes of the question of priority between the mechanics and mortgagee, and subordinates the mortgage to their liens.

The counsel for the mechanics discussed the question as to whether there should be any priority as between them. It seems to me that the view I have taken of the first question disposes substantially of this, for it follows logically from it that there can be no preference as between them. I have held that the mechanics' liens by relation date from the commencement of the building, not one but all. The circumstance of one commencing work first does not give any priority. They all stand on the same footing and are to be paid in full or pro rata, as the funds may suffice. Such is the express provision of the statute of New Jersey. But without any statute, such construction is the most just and equitable. The building is the result of the labor of the mason, carpenter, bricklayer, plasterer, glazier and painter. It is the joint product of the skill of the artisan and the means of the material man. Each contributed and each should share alike without preference. Some one of the various kinds of mechanics must commence first, but the accident of commencing does not give that one any superior equity.

There is a like statute in the states of California and Oregon, and in both of these states it has been held that all liens arising under the act stand upon the same footing. All relate to the commencement of the building, and none have priority over the others. Moxley v. Shepard, 3 Cal. 64; Crowell v. Gilmore, 18 Cal. 370; Willamette Falls Co. v. Riley, 1 Or. 183.

Logically these cases support as well the first proposition hereinbefore discussed, for they each hold that such liens by relation take effect from the commencement of the building. If so, they must necessarily overreach all subsequent mortgages or transfers. I do not find, nor was I referred by the learned counsel to any case holding a different doctrine.

In the state of Ohio, where the law gives a lien only "from the commencement of the work or furnishing materials," the supreme court, in a remarkably well considered case (Choteau v. Thompson, 2 Ohio St. 114) hold that the act creates no priority as between the mechanics and material men; that, though they commenced work at different times, they were to be paid equally. The decision is based upon the manifest equity of the statute in view of the position in which each mechanic stands to the building.

The lien holders, or some of them, I understand, have taken judgment for the amount of their liens. I do not wish to be understood as expressing any opinion upon the validity of such judgments, or as sustaining the right of a party to proceed to judgment after bankruptcy proceedings are commenced. These matters are reserved until the debts or judgments are proved and properly before the court.

---

## Case No. 6,806.

### In re HOYT.

[3 N. B. R. (1870) 55 (Quarto, 13).] [1]

### District Court, D. Massachusetts.

BANKRUPTCY—PAYMENT OF SURPLUS TO BANKRUPT—NO DEBTS PROVED—PROCEDURE.

The surplus funds in the hands of the assignee, after the settlement of the estate, where no debts have been proved, and there is reasonable cause to believe that none will be proved, are to be paid to the bankrupt upon the filing of a petition on oath by him, setting forth his reasons for believing that no creditors desire to prove their debts, and asking that the funds shall be paid to him.

[Cited in Re Smith, Case No. 12,989; Nicholas v. Murray, Id. 10,223.]

[Cited in Perry v. Lorillard Fire Ins. Co., 61 N. Y. 216; Page v. Waring, 76 N. Y. 473; King v. Remington, 36 Minn. 31, 29 N. W. 352.]

[In bankruptcy. In the matter of A. W. Hoyt.]

LOWELL, District Judge. The assignee in this case petitions for leave to transfer to the bankrupt the net assets in his hands, the case having been in court for a long time, and fully settled in the usual way, and no creditors having proved their debts, and there being good reason to believe that none intend to do so. The bankrupt was discharged more than a year ago. After the debts are paid, the assignee is a trustee for the bankrupt. Charman v. Charman, 14 Ves. 580. And the debts are those which have been duly proved to be such. The assignee is not an agent to pay the bankrupt's creditors against their will; and their will to be paid can be shown only by their acts in court. There are no creditors but such as prove their debts. The schedule may show that there are said to be

1 [Reprinted by permission.]

possible creditors, but the schedule may be mistaken, or all the schedule creditors may have security, as is said to be the case here; or they may have other reasons, satisfactory to themselves, for not wishing to prove their debts. Until they do prove, the assignee has no concern with them, excepting to see that they are notified, and have full information of the proceedings, and an opportunity to come in if they wish to do so. When this or a similar petition was first presented in this case, I postponed its consideration in order to make sure that such opportunity had been afforded. In the meantime there has appeared a summary of two cases, in which it is said to have been decided that the assignee, after paying in full the debts which have been proved, must apply the surplus to the payment of such as have not been proved. In re James [Case No. 7,175]; In re Haynes [Id. 6,269]. I apprehend there must be some mistake in the brief reports of these cases. What the learned judge insisted on must have been, I suppose, that non-proving creditors should be carefully warned and notified. There is no warrant in the statute for paying a dividend to such persons; on the contrary, all the sections upon the subject, expressly, or by necessary intendment, refer to creditors who have verified their debts in the mode required by law. In England, this matter is regulated by St. 12 & 13 Vict. c. 106, § 117; but the law is the same here, because by force of the assignment there is a resulting trust, after the express trusts have been fulfilled; and it is not any part of an assignee's trust to seek out and satisfy supposed creditors, who do not choose themselves to come forward. The bankrupt should file his petition on oath, showing his reasons to believe that no creditors desire to prove, and asking to have the fund paid out to him, and it will be granted.

---

HOYT (ARMSTRONG v.). See Case No. 544a.

---

## Case No. 6,807.

HOYT et al. v. BYRD et al.

[Hempst. 436.] [1]

Circuit Court, D. Arkansas. June, 1841.

BOND FOR COSTS—WHAT IS SUFFICIENT.

1. A bond conditioned for the payment of "all costs that may accrue in a suit, and be adjudged against the plaintiff," is a sufficient compliance with the rule requiring an indorser "for all costs for which the plaintiff may be liable in the suit."

2. Each party is supposed to pay his own costs as they arise in the course of proceedings; and the court will compel the performance of this duty by attachment if necessary.

[This was an action at law by William S. Hoyt, William Wade, Alfred H. P. Edwards,

and Benjamin Hoyt against Richard C. Byrd, Sterling H. Tucker, and James Scull, Jr.]

S. H. Hempstead and R. W. Johnson, for plaintiffs.

F. W. Trapnall and John W. Cocke, for defendants.

JOHNSON, District Judge. The motion is to dismiss the suit, "because the plaintiffs have not filed, before the institution of this suit, a bond for costs as required by the rules and practice of the court." The rule of this court, upon this subject, is as follows: "The clerk shall require of all non-residents of this district an indorser for costs." The following form upon the declaration, petition, or bill of complaint may be substantially pursued: "I, A. B. acknowledge myself security for all costs for which the plaintiff may be liable in this suit." The bond or indorsement made in this case is in the following words: "I acknowledge myself held and firmly bound to the defendants for all costs that may accrue in this suit, and be adjudged against the plaintiff." The objection taken to the bond just recited is, that it does not in substance conform to the one required by the rule. The rule requires a bond for "all costs for which the plaintiff may be liable in the suit;" and this bond is "for all costs that may accrue in this suit, and be adjudged against the plaintiff." If all the costs for which the plaintiff may be liable, may be adjudged against him, then the obligation of this bond is coextensive with the obligation required by the rule. It can admit of no doubt, that the court may and is bound to adjudge against the plaintiffs all the costs for which they are liable in this suit, upon the motion of those entitled to receive them. Suppose the plaintiffs recover in this action their demand and costs of suit, and fail to collect the costs from the defendant, are they in that event exempted from the payment of the costs occasioned by them? I apprehend they are not, but that upon the application of those entitled, the court will order the plaintiffs to pay their costs, and will enforce the payment by a writ of attachment. 2 Tidd, 905; Bowne v. Arbuncle [Case No. 1,742]. This order is an adjudication and a judgment which may be enforced by the incarceration of the party against whom it is rendered. According to the English practice, each party pays his costs, as they arise in the course of the proceedings, and upon their failure to do so the court will compel them to pay by the process of attachment. 2 Tidd, Costs, 905. The same power is possessed by this court, and will be exercised whenever a party liable for costs shall fail to pay them. If, then, all the costs for which the plaintiffs are liable in this suit may be adjudged against them, and which cannot be doubted, it follows conclusively that the obligation of this bond is